UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BRANT SMITH,

Plaintiff(s),

-against-

NED LAMONT, in his official capacity as the Governor of the State of Connecticut; WILLIAM TONG, in his official capacity as Attorney General of the State of Connecticut; BRYAN T. CAFFERELLI, in his official capacity as Commissioner of the Connecticut Department of Consumer Protection

Defendants.

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

25-CV-1728 (VDO)

**VERNON D. OLIVER**, United States District Judge:

This action is a challenge to the Social Equity Applicant ("SEA") provision of the Responsible and Equitable Regulation of Adult-Use Cannabis Act ("RERACA"), Public Act 21-1, Conn. Gen. Stat. § 21a-420 *et seq*. Plaintiff, Brant Smith, is a thirty-year resident of the State of Connecticut who has not been able to obtain a license to engage in the cultivation of cannabis under RERACA. He attributes his inability to obtain a license to the SEA provision of RERACA and claims that RERACA's prioritization of SEAs discriminates against him in violation of the dormant Commerce Clause. Before the Court is a motion to dismiss the complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("the Motion"), brought by defendants Governor Ned Lamont, Attorney General William Tong, and Commissioner Bryan Cafferelli, all in their official capacities as Connecticut state officials (collectively, "Defendants"). For the reasons set forth below, the Motion is **granted**.

# I. BACKGROUND

## A. RERACA

In 2021, Connecticut enacted RERACA to create a legal and regulated market for the sale of adult-use cannabis.[1] The Department of Consumer Protection (the "Department") has jurisdiction over the adult-use cannabis market and issues licenses to cannabis establishments.[2] In creating RERACA, the Connecticut legislature sought to establish a licensing scheme that prioritized granting licenses to SEAs.[3] This was part of the legislature's stated goal to "promote and encourage full participation in the cannabis industry by persons from communities that have been disproportionately harmed by cannabis prohibition and enforcement."[4] RERACA defines SEAs as follows:

> "Social equity applicant" means a person that has applied for a license for a cannabis establishment, where such applicant is controlled, and at least sixty-five per cent owned, by an individual or individuals, or such applicant is an individual, who:
>
> (A) Had an average household income of less than three hundred per cent of the state median household income over the three tax years immediately preceding such individual's application; and
>
> (B) (i) Was a resident of a disproportionately impacted area for not less than five of the ten years immediately preceding the date of such application; or

---

[1] *See* Compl., ECF No. 1 ¶¶ 8–9.

[2] *See id.* ¶ 14.

[3] *Id.* ¶¶ 10, 13, 19. The complaint misquotes RERACA and misidentifies SEAs as "Social Equity Individuals." *See id.* ¶¶ 10–11, 18–21. The term "Social Equity Individual" does not exist in the statute, and it appears to be a scrivener's error for the defined term "Social Equity Applicant." Accordingly, the Court takes judicial notice of the RERACA statute and will refer to the correct statutory language throughout the opinion. *See Zimmelman v. Teachers' Ret. Sys. of City of N.Y.*, No. 08 Civ. 6958, 2010 WL 1172769, at *8 n.10 (S.D.N.Y. Mar. 8, 2010) ("A court may take judicial notice of relevant statutory materials on a motion to dismiss.") (collecting cases).

[4] Conn. Gen. Stat. § 21a-420d(f).

> (ii) Was a resident of a disproportionately impacted area for not less than nine years prior to attaining the age of eighteen[.][5]

Disproportionately impacted areas are located exclusively in Connecticut and have threshold rates of poverty and historical criminal convictions for drug-related offenses.[6] RERACA tasks a Social Equity Council with determining whether an applicant meets the criteria to qualify as an SEA.[7] It accomplishes this by reviewing the "ownership information and any other information necessary to confirm that a cannabis license application from a [SEA] qualifies under Connecticut General Statutes § 21a-420 *et seq*."[8]

Through this framework, RERACA establishes two relevant methods for obtaining cannabis cultivator licenses.[9] Under the first method, Conn. Gen. Stat. § 21a-420g permits the Department to award § 21a-420n cultivator licenses through a lottery system and reserves fifty percent of the licenses for SEAs.[10] Under the second, the Department may issue cultivator licenses to SEAs outside of the lottery process.[11] Specifically, Conn. Gen. Stat. § 21a-420o allows SEAs to apply for cultivator licenses in a non-lottery application process if the cultivation facility were to be located in a disproportionately impacted area.[12] Connecticut has not yet held a lottery to award cannabis cultivator licenses under § 21a-420g, and no future

---

[5] Conn. Gen. Stat. § 21a-420(51); *see also* ECF No. 1 ¶ 11.

[6] *See* Conn. Gen. Stat. § 21a-420(20).

[7] Conn. Gen. Stat. § 21a-420g; *see also* Compl. Ex. 1, ECF No. 1-1 at 1–8.

[8] ECF No. 1-1 at 1; *see also* Conn. Gen. Stat. § 21a-420g.

[9] RERACA also established a separate micro-cultivator licensing regime. *See* Conn. Gen. Stat. 21a-420p.

[10] *See* ECF No. 1 ¶ 9; Conn. Gen. Stat. § 21a-420n.

[11] *See* Conn. Gen. Stat. § 21-420o.

[12] *Id.*

lotteries have been scheduled.[13] Thus, to date, general applicants that do not qualify for SEA status have not been able to obtain licenses to cultivate cannabis.[14]

### B. Mr. Smith's Cultivation License Application

Mr. Smith has been a resident of the State of Connecticut for more than thirty years.[15] He sought to obtain a cultivation license under RERACA to engage in the cultivation, growing, and propagation of marijuana on at least 15,000 square feet of growing space.[16] But to date, he has not been able to obtain such license.[17] He claims that he is not a "Social Equity Individual," and that the SEA provision of RERACA's licensing scheme has prevented him from obtaining a cannabis cultivation license.[18]

### C. Procedural History

Plaintiff filed this matter on October 14, 2025, requesting: (1) a declaration that the RERACA licensing scheme violates the dormant Commerce Clause by favoring in-state SEA applicants; and (2) injunctive relief prohibiting the enforcement of the "unconstitutional licensing provisions of RERACA."[19] Defendants filed the instant Motion on January 29, 2026.[20] Plaintiff responded to the Motion on March 2, 2026, and Defendant replied on April 2, 2026.[21]

---

[13] ECF No. 1 ¶¶ 16–17.

[14] *Id.* ¶ 16.

[15] *Id.* ¶ 1.

[16] *Id.* at 1.

[17] *Id.* ¶ 18.

[18] *Id.* ¶¶ 1, 18.

[19] *Id.* at 9.

[20] *See* Mot. to Dismiss, ECF No. 29.

[21] *See* Resp., ECF No. 31; Reply, ECF No. 32.

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court "lacks the statutory or constitutional power to adjudicate it, such as when the plaintiff lacks constitutional standing to bring the action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (cleaned up). "A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). When the Rule 12(b)(1) motion is facial, "*i.e.*, one 'based solely on the allegations of the complaint or the complaint and exhibits attached to it,' plaintiffs have no evidentiary burden, for both parties can be said to rely solely on the facts as alleged in the plaintiffs' pleading." *Katz v. Donna Karan Co.*, 872 F.3d 114, 119 (2d Cir. 2017) (quoting *Carter*, 822 F.3d at 56). The pleading must "show[] by a preponderance of the evidence that subject matter jurisdiction exists." *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003). In considering a Rule 12(b)(1) motion to dismiss for lack of standing, courts in this Circuit construe "the complaint in [the] plaintiff's favor and accept[] as true all material factual allegations contained therein." *Donoghue v. Bulldog Invs. Gen. P'ship*, 696 F.3d 170, 173 (2d Cir. 2012).

"Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the Pleading." *Carter*, 822 F.3d at 57. "It is only where 'jurisdictional facts are placed in dispute' that the court has the 'obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.'" *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 442 (2d Cir. 2022) (quoting *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014)). "If the extrinsic evidence presented by the

defendant is material and controverted, the district court will need to make findings of fact in aid of its decision" *Carter*, 822 F.3d at 57.

**B. Rule 12(b)(6)**

A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Loc. 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When considering a Rule 12(b)(6) motion, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995)). "[T]he court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and decide whether it is plausible that plaintiffs have a valid claim for relief." *Leonard v. Gen. Motors L.L.C.*, 504 F. Supp. 3d 73, 83 (D. Conn. 2020).

# III. DISCUSSION

## A. Eleventh Amendment

Defendants argue that Plaintiff lacks standing because all of the named Defendants are improper parties under the Eleventh Amendment and *Ex parte Young*, 209 U.S. 123 (1908), because they do not have defined enforcement roles related to the SEA criteria being challenged.[22] According to Defendants, the only proper party to this action is one that is not named: the Social Equity Council that is responsible for enforcing the SEA residency requirement.[23] In response, Plaintiff contends Defendants are proper parties to this matter as each has an active role in the enforcement of RERACA.[24] The Court agrees with Defendants in part. Governor Lamont and Attorney General Tong are not proper parties to this case because they do not have particularized duties related to enforcing the SEA provision of RERACA or issuing cannabis cultivation licenses. However, Commissioner Cafferelli, as the Commissioner of the Department Consumer Protection, is a proper party to this action because the Department is charged with issuing final cannabis cultivation licenses.

"The Eleventh Amendment bars suits against states and their officials unless the state consents to suit, Congress abrogates the state's immunity, or the case falls within the *Ex parte Young* exception." *NAACP v. Merrill*, 939 F.3d 470, 475 (2d Cir. 2019). Under *Ex parte Young*, to make "an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state,

---

[22] ECF No. 29-1 at 17–19.

[23] *Id.* at 18.

[24] ECF No. 31 at 13–15.

and thereby attempting to make the state a party." *Ex parte Young*, 209 U.S. 123, 157 (1908). "A particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty is needed for a state officer to be a proper defendant under *Ex parte Young*." *Connecticut Ass'n of Health Care Facilities, Inc. v. Rell*, No. 10-CV-136 (PCD), 2010 WL 2232693, at *5 (D. Conn. June 3, 2010) (cleaned up).

First, Governor Lamont is an improper party because he lacks a particular duty to enforce the SEA provision of RERACA. Plaintiff alleges that the Governor is appropriately named in this action because (1) he has taken an active role in the enforcement of the statute, and (2) he has directed investigations into SEAs seeking licenses under RERACA.[25] In support of his argument, Plaintiff cites to a report by the Connecticut Comptroller.[26] In 2024, the Connecticut Comptroller (acting at the request of the Governor) exercised his authority under Conn. Gen. Stat. § 3-112(b) to prepare a special report on the Social Equity Council's "financial management and governance practices, including adherence to relevant statutes and regulations; the process of awarding licenses, grants, and loans; and program effectiveness."[27] However, requesting a report is not an affirmative action to enforce RERACA, and it does not indicate that Governor Lamont has a specific duty to enforce the statute. Further, the Governor's generalized duty to enforce Connecticut law does not render him a proper party to this action. *See Grant v. Lamont*, No. 22-CV-01223 (JBA), 2023 WL 5435941, at *2 (D. Conn. Aug. 23, 2023) ("A governor's general constitutional duty to 'take care that the laws be

---

[25] ECF No. 31 at 14.

[26] *Id.* at n.8.

[27] Office of the State Comptroller, *Comptroller Sean Scanlon Announces Findings and Recommendations from Social Equity Council Audit* (Sept. 23, 2024), https://perma.cc/4FBC-GY6L.

faithfully executed,' Conn. Const. art. IV., § 12, does not implicate *Ex parte Young*."). Thus, Governor Lamont is an improper party.

The Attorney General is likewise not a proper party to this action. Plaintiff cites to language within the statute to assert that the Attorney General, upon complaint by the Commissioner of the Department Consumer Protection, may bring an action to enforce provisions of RERACA.[28] But Plaintiff fails to mention that the statute specifically authorizes the Attorney General to bring an action against persons for the sale, offer for sale, or the delivery of cannabis without a license. *See* Conn. Gen. Stat. § 21a-420c(f)(4). It does not give the Attorney General the ability to grant licenses, determine social equity criteria, or enforce social equity criteria. And enjoining the Attorney General's authority to bring an action against a person for operating without a license would not address Plaintiff's general inability to obtain a cultivation license. Thus, the Attorney General is not an appropriate party under *Ex parte Young*.

However, Commissioner Cafarelli is a proper party to this matter. Defendants claim that because the Commissioner "neither sets the [SEA] criteria nor applies them, he is not a proper party to this lawsuit."[29] But the Department of Consumer Protection has a more central role: it issues final licenses and accepts license applications under RERACA. While Defendants are correct that "it is the Social Equity Council—not the Department—that applies the statutory standards for determining social equity eligibility," Plaintiff is not seeking to have the social equity standards applied to him. He is seeking to have those standards invalidated,

---

[28] ECF No. 31 at 14 (citing Conn. Gen. Stat. § 21a-420(4)).

[29] ECF No. 29-1 at 19.

and his alleged injury is the fact that he has been unable to receive a license at all. Commissioner Cafarelli is charged with leading the Department that issues the licenses, so if any relief may be afforded to Plaintiff by enjoining the cannabis cultivation license regime created by RERACA, such an injunction would be most appropriately directed toward the Commissioner. Accordingly, the Commissioner is a proper party to this lawsuit.

Because Plaintiff failed to demonstrate that Governor Lamont or Attorney General Tong have "some connection with the enforcement" of SEA provision of RERACA, those defendants are **dismissed** from this action. However, Plaintiff has demonstrated that enjoining the actions of Commissioner Cafarelli could afford relief, as the Commissioner has a duty to enforce the licensing provision of RERACA. Thus, he remains a proper party to this action.

### B. Traceability

Defendants argue that the Plaintiff lacks standing because his injury is not traceable to the allegedly protectionist aspect of Connecticut's licensing regime. As they explain, "even if a state law discriminates against out-of-state interests, a plaintiff lacks standing to bring a dormant Commerce Clause claim if it sustains an injury that is only traceable to a different, nondiscriminatory aspect of the law."[30] In response, Plaintiff alleges that "his status as a Connecticut resident does not prohibit a dormant Commerce Clause claim" because RERACA's preference for certain in-state cultivation license applicants prohibits him from engaging in the nation-wide cannabis market.[31] The Court agrees with Defendants.

---

[30] *Id.* at 9.

[31] ECF No. 31 at 8–11.

"Article III of the Constitution limits federal court jurisdiction to cases in which the plaintiff can show standing, *i.e.* 'that she has suffered, or will suffer, an injury that is concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Variscite NY Four, LLC v. N.Y. State Cannabis Control Bd.*, 152 F.4th 47, 56 (2d Cir. 2025) (quoting *Murthy v. Missouri*, 603 U.S. 43, 57 (2024)). "At the pleading stage, 'the plaintiff must clearly allege facts demonstrating each element.'" *Coal. for Competitive Elec., Dynergy Inc. v. Zibelman*, 906 F.3d 41, 58 (2d Cir. 2018) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). "Accordingly, to show standing for their dormant Commerce Clause claim, Plaintiffs must demonstrate that their alleged injuries are traceable to (i.e., the result of, or a consequence of), discrimination against interstate commerce." *Id.* (cleaned up).

Plaintiff's stated injury is that he cannot acquire a cannabis cultivation license because he is not a "Social Equity Individual." However, he does not trace his failure to qualify to any part of the licensing regime that restricts licenses to in-state residents. To qualify as an SEA under RERACA, an individual must (1) not exceed the income threshold, which is an "average household income of less than three hundred per cent of the state median household income over the three tax years immediately preceding such individual's application," and (2) meet the disproportionately impacted area residency requirements. Conn. Gen. Stat. § 21a-420(51). Plaintiff's only allegation is that he is not a "Social Equity Individual." He does not explain why he would not qualify for SEA status, whether he was actually denied a cultivation license, or whether a determination was made by the Social Equity Council that he was not a "Social Equity Individual" or if he arrived at that conclusion himself. He also does not explain whether he fails to meet the criteria because he exceeds the income threshold or because he resides in

a census tract that is not identified as a disproportionately impacted area. Thus, the Court is left to speculate as to whether enjoining the allegedly protectionist aspects of RERACA would resolve Plaintiff's injury. For instance, Plaintiff could live in a disproportionately impacted area but fail to qualify simply because he exceeds the income threshold. In that case, even if this Court were to enjoin the disproportionately impacted are area residency requirement (which limits SEA status to those with prior or current residence in certain Connecticut census tracts), Plaintiff still would not be able to obtain a cannabis cultivation license. At this stage, Plaintiff bears the burden of clearly alleging facts that demonstrate the elements of standing. But on the facts pleaded in the complaint, the Court cannot determine whether Plaintiff's injury is the result of discrimination against interstate commerce. Accordingly, Plaintiff lacks standing because he failed to plead facts demonstrating that his injury is "fairly traceable" to a violation of the dormant Commerce Clause.

**C. "Zone of Interests"**

Even if Plaintiff could establish standing, he would fail to state a claim under Rule 12(b)(6) because, as Defendants argue,[32] his alleged injury is not within the zone of interests protected by the dormant Commerce Clause.

"Under the zone-of-interests doctrine, a plaintiff may state a cause of action only when his interests in the litigation 'fall within the zone of interests protected by the law invoked.'" *Fed. Defs. of N.Y., Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 127 (2d Cir. 2020) (quoting *Bank of Am. Corp. v. City of Miami*, 581 U.S. 189, 196–97 (2017)). The zone of interests test applies in equal measure to both statutory causes of action and constitutional claims. *See Coal.*

[32] ECF No. 29-1 at 11–15.

*for Competitive Elec., Dynegy Inc. v. Zibelman*, 272 F. Supp. 3d 554, 581 (S.D.N.Y. 2017), *aff'd*, 906 F.3d 41 (2d Cir. 2018) (applying the zone of interests test to a claim under the dormant Commerce Clause); *Boston Stock Exch. v. State Tax Comm'n*, 429 U.S. 318, 320 n.3 (1977) (same). Although the zone of interests test was originally construed as a test of prudential standing, the Supreme Court has recently clarified that "the zone of interests test asks whether the complaint states an actionable claim under a statute (and not whether the plaintiff has standing and the court has subject matter jurisdiction)." *Citizens for Resp. & Ethics in Wash. v. Trump*, 953 F.3d 178, 200 (2d Cir. 2019) (citing *Bank of Am. Corp.*, 581 U.S. at 196–97 (2017)), *vacated on other grounds*, 592 U.S. 1233 (2021). Thus, a zone of interests challenge properly falls under Rule 12(b)(6) for failure to state a claim. *See id.*

"The zone of interests protected by the dormant Commerce Clause is the economic interests of out-of-state entities." *Coal. for Competitive Elec., Dynegy Inc.*, 272 F. Supp. 3d at 582; *see also Allocco Recycling, Ltd. v. Doherty*, 378 F. Supp. 2d 348, 358 (S.D.N.Y. 2005). To fall within the zone of interests protected by the dormant Commerce Clause, a plaintiff must "allege an injury stemming from the application of the licensing requirement in a manner discriminatory to out-of-state interests," *L.A.M. Recovery, Inc. v. Dep't of Consumer Affs.*, 184 F. App'x 85, 88–89 (2d Cir. 2006) (summary order), that is "more than an altruistic concern for somebody else's rights." *Moya v. U.S. Dep't of Homeland Sec.*, 975 F.3d 120, 132 (2d Cir. 2020).

On the facts alleged in the complaint, Plaintiff's injuries have little relation to out-of-state economic interests. Plaintiff is a *Connecticut* resident that has been unable to obtain a *Connecticut* cannabis cultivation license to grow cannabis in *Connecticut*. In the opposition, Plaintiff appears to assert that the dormant Commerce Clause applies because the SEA

provision of RERACA prohibits him from participating in the interstate cannabis market.[33] But the complaint never alleges that Plaintiff intends to sell or distribute cannabis outside of Connecticut.[34] The dormant Commerce Clause protects out-of-state economic interests, but Plaintiff failed to allege that he intends to engage in interstate commerce.[35] Thus, on the facts before the Court, "[t]his is not a case about harm to interstate commerce," *DeLorean 88 LLC v. District of Columbia*, 806 F. Supp. 3d 49, 65 (D.D.C. 2025), and Plaintiff's interests in the litigation fall outside of the zone of interests protected by the dormant Commerce Clause.

**D. Illegality of the Interstate Marijuana Market**

Finally, Defendants argue that Plaintiff fails to state a claim because the dormant Commerce Clause does not apply to the federally illegal cannabis market. They note that the "applicability of the dormant Commerce Clause to cannabis markets in states where the sale of cannabis has been made legal has resulted in a split in authority among the circuits."[36] But the current circuit split has no bearing on this case. The Second Circuit has explicitly held that the dormant Commerce Clause applies to state regulation of marijuana markets in the case *Variscite NY Four, LLC v. New York State Cannabis Control Board*, 152 F.4th 47 (2d Cir. 2025). There, the Second Circuit explained: "In the context of the affirmative Commerce Clause, it is of no constitutional import that the marijuana market is an unlawful market that Congress sought to eradicate, and not a lawful market that Congress sought to protect and stabilize. The same holds for the dormant Commerce Clause." *Id.* at 60 (cleaned up).

---

[33] ECF No. 31 at 11–12.

[34] *See generally* ECF No. 1.

[35] *Id.*

[36] ECF No. 29-1 at 21.

Although there is a split amongst circuits, *compare id., with Peridot Tree WA, Inc. v. Wash. State Liquor & Cannabis Control Bd.*, 162 F.4th 1179, 1181 (9th Cir. 2026), this Court is bound by the Second Circuit's decisions of law. The Second Circuit has been exceptionally clear in holding that the dormant Commerce Clause applies to federally illegal markets. *See Variscite*, 152 F.4th at 60. Indeed, Defendants concede this point in the Motion when they state, "although Defendants acknowledge that *Variscite* represents binding authority on this Court, the split in authority among the circuits may result in further developments in the law."[37] This Court will not depart from the Second Circuit's binding precedent.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 29) is **GRANTED**. As Plaintiff lacks standing to bring this claim, the matter is **dismissed without prejudice**. However, the Court will permit Plaintiff to file an amended complaint on or before **October 21, 2026**. If an amended complaint is not filed by that date, the matter will be dismissed, and the case will be closed.

**SO ORDERED.**

Hartford, Connecticut
September 22, 2026

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge

[37] *Id.* at 18.